## COLLINS, appellant, *vs.* HOXIE and others, respondents.

Where the testator, by his will, directed that his residuary estate should be divided equally among the children of his sister and of his two brothers, when they should severally become of age; *Held*, that each child was entitled to an equal share of the estate *per capita*, and not by representation of their respective parents. *Held also*, that the eldest daughter of one of the brothers, actually born before the marriage of her parents, although she had been recognized by her reputed father and was brought up by him in the same manner as his other children, was not entitled to a distributive share of the estate of the testator.

Where there are legitimate children in existence at the time of making the will, so as to satisfy the words of the devise or bequest in their primary sense, an illegitimate child cannot take under a general devise or bequest to children, as a class, unless there is something else appearing in the will to show that the testator intended to include others besides legitimate children.

In a residuary or other bequest, to children and grand children, or brothers and sisters, and nephews and nieces, as a class, all the legatees take equally *per capita;* unless there is something in the will itself indicating a different intention on the part of the testator.

The respondents, in an appeal from the sentence or decree of a surrogate, upon the settlement of the account of an executor or administrator, directing the distribution of the estate, are not entitled to a modification of the decree as between themselves; nor to o modification as against the appellant, except as to erroneous items in the account as provided for by the 118th rule of the court of chancery.

Where the appeal from the decree of the surrogate is not in relation to the allowance or rejection of particular items of the account, or if the respondent wishes the decree modified in any other respect than as to particular items of the account, he must bring a cross appeal.

If an executor in suing for debts supposed to be due to the estate, brings a suit in good faith, under the advice of counsel, and in a manner which is apparently for the benefit of the estate, he will not be subjected to personal loss, although the result shows that a different mode of proceeding would have been more beneficial to the parties interested in the estate.

This was an appeal by Hezekiah Collins, one of the residuary legatees of Luke Hoxie, deceased, from the sentence and decree of the surrogate of the county of Madison, for the final settlement of the accounts of the executors, and for the distribution of the estate of the decedent among his residuary legatees. The executors rendered their account, of receipts and disbursements, and of the estate of the decedent which had come to their hands. To which account the appellant, and four others of the residuary legatees, objected that the executors had not charged themselves with a quantity of grain, and a few hogs and cattle, which it was alleged belonged to the decedent at the time of his death. They also insisted that the executors ought to be charged with the amount of a note of P. Langworthy, of $670, which the executors had caused to be sued in the name of another person, to endeavor to evade the defence of usury thereto, but in which suit they finally failed; and that the executors ought not to be credited with the costs which had been paid in that suit. Witnesses were examined before the surrogate in relation to these matters, and the surrogate decided against the objections. The testator by his will, after devising a part of his estate to the appellant, his nephew, for life, with remainder in fee to his heirs, and giving certain pecuniary legacies to the amount of $1850, gave the residue of his property to be divided equally among the children of his sister Mary, his brother Solomon, and his brother John, when they should severally become of age. At the death of the testator there were eight children of his sister Mary, nine of his brother Solomon, and six of his brother John, including Rhoda, the wife of J. Delancy; making twenty-three in all. But in the course of the investigation before the surrogate, the appellant and some of his brothers and sisters introduced witnesses to prove that Rhoda was in fact born before the marriage of John Hoxie with her mother. They therefore insisted that she was not to be considered as one of the children of John Hoxie, so as to entitle her to a share of the estate as one of the residuary lega-

1841.

Collins
v.
Hoxie.

tees. They also insisted that all the legitimate children of the brothers and sister of the testator were entitled to take *per capita*, and not by representation ; and that the appellant and each of his brothers and sisters were therefore entitled to one twenty-second part of the residuary estate. It appeared by the testimony that Rhoda had always, until her marriage, been called Rhoda Hoxie, had lived in the family of her reputed father, and been treated as one of his children ; and had been recognized as such by the testator and other branches of the family, and had occasionally received presents from him. The surrogate decided that the children of the brothers and sister of the decedent were all entitled to equal portions of the residuary estate, and that Rhoda was entitled to share in the same, as one of the children of John. The surrogate also ascertained and settled how much each legatee had received from the executors ; some of them having received more and some of them less than their distributive shares ; and he decreed payment by the executors to those who had received less than their shares, including the interest thereon. According to the decree, the appellant Hezekiah Collins had received $119,27 more than the amount of his distributive share ; which sum, with the interest thereon, left a balance against him of $155,57.

The appellant, in his petition of appeal, objected that the executors had not been charged with a cow and eight hogs, not included in the inventory of the estate ; and that they had been credited with the costs in the suit brought against Langworthy upon the usurious note. He also insisted that if the amount of the residuary estate was correctly stated by the surrogate, the decree was erroneous in awarding any portion of such estate to Rhoda, the wife of J. Delancy, as one of the residuary legatees under the will ; the result of which error was to give to the appellant and to each of the other residuary legatees $7,93 less than they were respectively entitled to by law.

Solomon Hoxie, one of the executors, in his answer to the petition of appeal, insisted that the amount stated as

due was erroneous, in not allowing him certain sums he had paid for taxes. He complained also of certain errors in the decree for distribution, as between him and his co-executor, in reference to over payments to the legatees. He, therefore, prayed that the decree might be modified and corrected so far as it was erroneous as against him, and that in all other things it might be affirmed.

John Hoxie, the co-executor, by his answer insisted that the decree appealed from was right and according to equity and justice, unless the appellate court should think that by the will of the testator the residuary estate should be distributed among the residuary legatees by representation ; one third to the children of each brother and sister of the decedent.

Three of the children of John Hoxie, and the husband of Rhoda Delancy, who was dead, by their answer insisted that the decree was according to equity and justice ; except that in the distribution of the property the decree was erroneous in not giving to the children of each brother and sister one third of the residuary estate, by representation. They, therefore, asked that the decree appealed from might be modified in this respect, and that in all other respects it might be affirmed.

The infant legatees put in an answer to the petition of appeal, by their guardian ad litem, submitting their rights to the court. And the other respondents having neglected to answer the petition of appeal, an order was duly entered that the appeal, as against them, be heard ex parte.

*A. Thompson*, for the appellant.

*C. Sherwood*, for Solomon Hoxie and the infant respondents.

*E. Holmes*, for John Hoxie and his children, and Delancy.

THE CHANCELLOR. The respondents in this case misapprehended the effect of the 118th rule of this court if they

supposed the final decree of the surrogate could be modified in their favor, where it was not found to be erroneous as against the appellant, without bringing a cross appeal; except in relation to the items in the account. But in case there is no error in the account, the appellant cannot succeed on his appeal if the decree is more favorable to him than it ought to have been. Should it therefore be found, upon examination, that the surrogate was wrong in supposing that Rhoda Delancy was entitled to share in the distribution as one of the residuary legatees, yet if he was equally wrong in deciding that the other children of the sister and brothers of the testator were entitled to take *per capita*, the appeal must of course be dismissed. For in that case the appellant would only be entitled to one twenty-fourth part of the residuary estate, instead of one twenty-third part thereof, awarded to him by the decree appealed from. It may be necessary, for that reason, to examine both of those questions, if it should be found that the appellant is in a situation, in other respects, to render a decision of either important in disposing of his appeal.

The claim to charge the executors with the cow and hogs, which were left unappraised, I think was properly rejected by the surrogate. It is fairly inferrible from the evidence that the testator had been living upon the farm of his father, for a great number of years, under an agreement that certain stock received with the farm and specified in that agreement should be returned when he left the farm. Although none of the original stock was in existence at the death of the testator, he was still bound to return it in kind or value. And at the time of the appraisal some of the property was left unappraised, for the purpose of satisfying this demand in behalf of the father. The admission of one of the executors, to the witness Rogers, that the fat cow and hogs belonged to the testator, does not prove that they were not left out of the inventory to satisfy that claim. Davis, one of the appraisers, states that the agreement was produced at the time of the appraisal, and that the hogs and some other property were left out of the in-

ventory to satisfy that claim ; but that no more property was left out than was sufficient to fulfil the agreement. It perhaps would have been more correct, where the substituted stock had not been agreed upon by the testator and his father in the lifetime of the former, to have inventoried the whole stock, and then for the executors to have turned out enough of the appraised property to satisfy the claim. But the result would have been the same to the legatees.

I do not understand by the petition of appeal that the appellant claims that the executors should be charged with the amount of the usurious note of Langworthy ; although such a claim was made before the surrogate. The only objection to the account in this respect, in the petition of appeal, as I understand it, is that the surrogate improperly charged the estate with the costs of the suit upon that note. Not having claimed the amount of the note in the petition of appeal, it was not competent for the appellant's counsel, upon the hearing of the appeal, to insist that the decree was erroneous in that respect, under the provisions of the 118th rule of this court. But if that claim was properly made here, I am satisfied the executors ought not to be charged with the note or any part thereof. The testimony shows that the note was usurious and void. Langworthy may have proposed to secure the amount actually due if they could agree what it was. But as the executors had no means of knowing whether the whole was or was not due, for Langworthy stated he did not know that he could prove the usury, they were not in a situation to compromise the debt, even if Langworthy had proposed to secure any specific amount. Their only safe course, therefore, was to put the note in suit, to recover the amount thereof if possible.

They also acted in good faith, and for the apparent interest of the estate, in bringing the suit in the name of a third person, under the advice of counsel, for the purpose, if possible, of avoiding the forfeiture of the debt in case the usury was proved. And for that reason I think the surrogate was right in allowing them the whole costs of

the litigation ; although they might perhaps have been excused from paying the defendant's costs if the suit had been brought in their own names, as executors. Where an executor in such a case acts in good faith, under the advice of counsel and apparently for the interest of the estate he represents, he ought not to be subjected to a personal loss because the result of his exertions was not quite as beneficial to the estate as a different course of proceeding might have been.

The item of taxes which the respondent Samuel Hoxie insists should have been allowed him, in reduction of the balance due, is not supported by any thing contained in the surrogate's return. And not having himself appealed, the correctness of the decree, as between him and his co-executor, or as between him and any other of the respondents, is not a proper subject of review here. In relation to some of the matters stated in his answer to the petition of appeal, it may be proper to say, it is stated in the surrogate's return that it appeared, from the admissions of the executors that of the assets which were remaining in their hands unexpended, John Hoxie had $351,35, and Solomon Hoxie had $1137,66. And these are the sums which they are respectively directed to pay in satisfaction of the debts and legacies remaining unpaid. I presume this includes interest on the fund for the time they were chargeable with interest, and without making them any allowance for over payments ; as the surrogate had a right to suppose the executors had taken the proper securities to enable them to recover back the excess, if any of the legatees had received more than their distributive shares.

The remaining question is as to the share of the appellant in the residuary estate as ascertained by the surrogate. And if the appellant is right in the claim made in his petition of appeal, that he was entitled to one twenty-second part thereof, then his distribntive share was nearly $8 more than it was declared to be by the decree of the surrogate. And instead of having been overpaid $119,27 and interest thereon, the amount which he received from the executors

more than his due, was but $111,34, exclusive of interest. As there was nothing due to him upon the accounting before the surrogate, he having already received from the executors more than he was entitled to in any event, I have very great doubts whether he had any right to appeal from the decree which does not direct him to pay back any thing. But as the decree declaring his rights as one of the residuary legatees under the will may, in a suit against him to recover back the excess he has received beyond his distributive share, be considered as conclusively settling what the amount of such distributive share was, I shall proceed to examine the questions presented by this part of the appeal. And if it turns out that he was entitled to a twenty-second part of the residuary estate, the decree must be modified so as to declare his rights in conformity with the decision in this respect. But even in that case it will not be necessary to alter the decree as to any other of the residuary legatees ; who have not thought proper to question the correctness of the surrogate's decision by joining in the appeal.

The fact is undisputed that Rhoda Hoxie, who was one of the reputed children of the testator's brother John, was not born in lawful wedlock. And the law appears to be settled that where there are legitimate children in existence at the time of making the will, so as to satisfy the words of the devise or bequest in their primary sense, an illegitimate child cannot take under a general devise or bequest to children, as a class, unless there is something appearing upon the face of the will to show that the testator intended to include others besides legitimate children. (*Cartwright* v. *Vawdry*, 5 *Ves. Rep.* 530. *Harris* v. *Lloyd, Turn. & Russ. Rep.* 310. *Swaine* v. *Kinnerly*, 1 *Ves. & Bea.* 469.) Here the children of John Hoxie are not named in the will ; nor is there any thing on the face of the will to show the testator did not use the word children in its primary or legal sense. The testimony *dehors* the will renders it probable that if he had thought of it he would have used words sufficient to include Rhoda as one of the

1841.

Collins
v.
Hoxie.

residuary legatees. He has not done so, however; and it is not in the power of the court to correct the mistake, or to make a new will for him.

There may perhaps be some doubt whether the testator by the words " *be divided equally among the children of my sister Mary, my brother Solomon, and my brother John*," intended the children of each should take an equal share of the residuary property, or that each of the children of the three should share equally among themselves. The settled rule of construction in such cases, however, seems to be that all the legatees take *per capita* unless there is something in the will itself indicating a different intention on the part of the testator. Thus in *Blacklee* v. *Webb*, (2 *Peer Wms. Rep.* 383,) where the testator, having had five children, one of whom had died leaving children, devised his residuary estate to three of his surviving children, and to the children of the other who was living, and of the one who was dead, Lord Chancellor King decided that the grand children of the testator were entitled to take equally with the three children *per capita*; especially as the parent of some of the grand children was living. (*See also Northey* v. *Strange*, 1 P. *Wms.* 343; *Butler* v. *Stratton*, 3 *Bro. C. C.* 367; *Wicker* v. *Mitford*, *Harg. Law Tracts*, 513.) I conclude therefore that the appellant was entitled to $181,84 as his distributive share of the estate.

The decree of the surrogate must be modified, by declaring the appellant's rights accordingly; and deducting the $7,93, and also $2,42 for the rateable proportion of the interest, from the amount which by the decree he is stated to have received beyond his distributive share; leaving the amount of excess $145,22 on the 26th of October, 1836. The decree may be so far modified, although the administrator of Rhoda Delancy is not before the court on this appeal. But I cannot alter the decree which the payment of a distributive share to her, so as to divide it among the other residuary legatees who have not appealed, in the situation in which the case now stands. Although the husband is entitled to administer upon his wife's

estate, he must take out letters of administration thereon to enable him to represent her rights in court.

Neither party is to have costs as against the other upon this appeal.