## JACOB J. SMITH *vs.* ALFRED CURTIS et al.

A testator devised his real estate to his wife for life, authorizing her to sell so much thereof as might be necessary for the payment of his debts and her own support, and further devised as follows: "And at the decease of my said wife, if any portion of my real estate remains unsold, I order and direct the same to be equally divided between my brother J., my sister H., and my deceased sister S.'s children, the said children to inherit the mother's share in case she had survived me and the brothers and sisters of my beloved wife"—the testator's sister H. died before him. *Held,* that the brothers and sisters of the testator's wife took equally with his own brother and his sister Sarah's children, and that the share of H. lapsed into the residuum of the estate, and should be divided in the same manner as the rest of the estate.

Case certified from the Monmouth Circuit.

Argued before the Chief Justice, and Justice ELMER.

*J. Parker*, for plaintiff.

*Bedle* and *Beasley*, for defendants.

The CHIEF JUSTICE. In this case we are called upon to give a construction to the following clause of the will of Joseph Smith, deceased, of the county of Monmouth. "I order and direct the same, (the residue of his real estate remaining unsold after the death of his wife,) to be equally divided between my brother Jacob, my sister Hannah, and my deceased sister Sarah's children, the said children to inherit the mother's share in case she had survived me and the brothers and sisters of my beloved wife."

Hannah died in the testator's lifetime; his wife had at the testator's death nine brothers and sisters living.

Did the wife's brothers and sisters, under the will, take equally, *per capita*, with the brother Jacob, sister Hannah, and the children of Sarah, taking but one share, or did they take but one-fourth to divide among them?

Did the share of Hannah, who died before the testator, lapse into the residue of the estate, to be disposed of under the clause in question, or descend to the testator's heirs-at-law?

These are the questions arising under this will, to be decided in this case.

I can perceive nothing in this will to distinguish this case out of the general rule of construction, that where a gift is to the children of several persons, or to a certain person and the children of a certain other person, or the brothers and sisters of a certain person, they take *per capita* and not *per stripes*, or, as a class, taking but one share. *Weed* v. *Bradbury*, 2 *Vin.* 705; *Lugon* v. *Barmon*, 1 *Cox* 250; *Lady Lincoln* v. *Pelham*, 10 *Ves.* 604; *Blackler* v. *Webb*, 2 *P. Wms.* 383; *Collins* v. *Hoxie*, 9 *Paige* 81.

These cases show the existence and extent of the rule. In many cases, perhaps, the application of the rule may

frustrate the actual intent of the testator, as we derive it from conjecture, as to the meaning of ambiguous language, but it is better to apply the rule, where there are no circumstances to show a contrary intent, to all cases falling clearly within its operation, than to indulge in mere conjecture, where different persons may come to opposite conclusions.

There are no glimpses in the will of an intent to give the wife's brothers and sisters but one share in all. The children of the deceased sister, by the express words of the clause, are limited to one share. There is no such limitation as to the wife's brothers and sisters.

The property is to be equally divided, and Sarah's children are to have but one share. The clause providing that they shall inherit the mother's share in case she survived the testator, cannot mean they shall take one-fourth, for, as heir-at-law, she would have taken one-third. It must mean they shall together have but one share.

The case of *Roome* v. *Counter*, 1 *Halst.* 111, does not rule this. In that case, Kirkpatrick, C. J., while denying the authority of the case of Blackler *v.* Webb, is careful to distinguish it from that case, by laying hold of the peculiar words used in the will before him, which were, that the property was to be equally divided between his son Henry, and the heirs of his son Peter, and his surviving daughters, as showing that they were to take as heirs, and not *per capita*, equally with the rest.

While recognizing the case of Blackler *v.* Webb as correctly decided, I think that where there is any expression in the will by which it can be perceived that the testator intended a division by stocks, that intention should be carried out. Not only is such intention not apparent on the face of this will, but it seems to me the contrary. He applies the principle of stock to one set of persons, and then immediately mentions another class of persons without doing so. The testator designed the brothers and sisters of his wife should share equally with his own.

The solution of the other question, what became of the lapsed share of Hannah, involves the construction of our statute of wills and the supplement of March 12th, 1861. Do these alter the common law rule, that a lapsed devise of real estate does not fall into the residue of the estate, like a lapsed legacy, but descends to the heirs-at-law? *Prescott* v. *Prescott*, 7 *Metc.* 145; *Haydon* v. *Stoughton*, 5 *Pick.* 528; *Brett* v. *Rigdon, Plow.* 345; *Fuller* v. *Fuller, Cro. Eliz.* 422; *Wynn* v. *Wynn*, 3 *Bro. P. C.* 95; 4 *Kent's Com.* 541.

Hannah's share of the land was one-twelfth, there being nine brothers and sisters of the testator's wife. This would go to Jacob and the children of the deceased sister Sarah, increasing their shares, each, by one-twenty-fourth part, making them, each, one-eighth, unless the common law has been altered by our statutes.

The 22d section of our statute of wills, (*Nix.* 877,) provides for the case of a child or descendant of the testator dying before the testator, and declares that the devise shall not lapse, but shall vest in the child or children or descendant of the devisee, as if the devisee had survived the testator, and died intestate, except where the will otherwise provides as to the children or descendants of the devisee.

This provision does not reach the case, nor are the wife's brothers and sisters heirs-at-law, so as to take by descent.

The supplement of March 12th, 1851, (*Nix.* 877, § 3,) provides that property acquired by the testator after making his will shall pass by any general or special devise sufficient to include it, had the same been acquired before, unless a contrary intention is manifest on the face of the will.

The doctrine that real estate, when lapsed as a devise, went to the heir-at-law, and not to the residuary legatee, was founded on the doctrine that the will did not pass after-acquired property.

Smith v. Curtis.

In some of the cases a distinction was taken between a void devise and a lapsed devise. The former went into the residuum of the estate, the latter to the heir-at-law, on the presumed difference of interest, that in the one case the residuary clause carried all that had not been legally disposed of by the will, speaking at the time of its execution, but not that which had been thus disposed of, where the disposition made was rendered ineffectual by subsequent death of the devisee before the devise vested. *Jar. on Wills* 302, *note*, and cases there cited.

If the reason on which the rule rested has been removed, by making the will speak as to after-acquired property, as if made at the death of the testator, the distinction between a lapsed devise and a lapsed legacy should not be kept up. 4 *Kent* 541; *Prescott* v. *Prescott*, 7 *Metc.* 146.

I think the one-twelfth of Hannah, by her death before the testator's, lapsed into the residuum of the estate, and was disposed of by the clause in question, so that the plaintiff in the case was entitled to one-eleventh of the land.

ELMER, J. Joseph Smith died in 1838 without issue, having first made his will in due form. By this will, he devised half an acre of land to one of his nephews, and all the remainder of his real estate to his wife for life, authorizing her to sell so much thereof as she might deem proper for the payment of his debts and her own support, "and at the decease of my said wife, if any portion of my real estate remains unsold, I order and direct the same to be equally divided between my brother Jacob, my sister Hannah, and my deceased sister Sarah's children, the said children to inherit the mother's share in case she had survived me and the brothers and sisters of my beloved wife."

The debts were paid, and the widow died without sell-

ing any part of the land. At the death of the testator, nine brothers and sisters of the wife were living, and the question submitted to us is, whether each of these brothers and sisters is entitled to take an equal share of the land with the testator's own brother and sister's children, or whether they are entitled collectively, to one share.

It cannot be doubted, I think, that the literal meaning of the words of this will is, that each brother and sister of the wife shall have an equal share of the property with the testator's brother and sisters who are named. Or, if this be doubted, it must be admitted that this meaning is quite as probable as any other. If a testator, dying without children, but leaving numerous brothers and sisters, had directed that his property should be equally divided between his brothers A and B and his other brothers and sisters, it would not have been disputed but that he meant to give each one an equal share. The impression that something different from the true meaning of the language used was intended, is seldom if ever made in cases where that meaning disposes of the property as it would go if there was no will. The natural feeling, especially in this country is, that in general the law gives the property to those who ought to have it.

In the case of *Blackler* v. *Webb*, 2 *P. Wms.* 383, where the testator bequeathed property equally to his son James and to his son Peter's children, to his daughter T. and his daughter Webb's children, and his daughter Mann, the court, although at first inclined to a different opinion, decided, after deliberation, that the grandchildren should take *per capita* and not *per stirpes*, upon the ground, that to determine that they should take *per stirpes* would be to go too much out of the will, and contrary to the words, when the meaning of the testator might be according to his words, and that meaning a reasonable and sensible one. And although this mode of construction will yield even to a very faint glimpse of a different intention in the con-

text, and Chief Justice Kirkpatrick, certainly a high authority, in the case of *Roome* v. *Counter*, 1 *Halst.* 114, declared he thought it in itself a very extraordinary decision, and such a one as would hardly be made by any court at that day, yet it has continued ever since to be received as the true rule. Powell and Jarman on Wills so state it. In the case of *Lady Lincoln* v. *Pelham*, 10 *Ves.*, *Jr.*, 176, a case not cited, and probably not seen by Kirkpatrick, Lord Eldon, eighty years after the decision in Blackler *v.* Webb, adhered to it as the settled construction from which he was not at liberty to depart, unless the particular circumstances required a different one. And the same construction was adopted in *Butler* v. *Stratton*, 3 *B. C. C.* 366; *Linden* v. *Blackmore*, 10 *Sim.* 626; *Dowding* v. *Smith*, 3 *Beav.* 641; *Baker* v. *Baker*, 6 *Hare* 270, and *Collins* v. *Hoxie*, 9 *Paige* 81.

The case of Roome *v.* Counter has been now strongly urged as establishing a different rule in this state, to which we are bound to adhere in opposition to the rule in England. Admitting that we ought not to depart from the decision adopted in that case, I do not think it governs the case before us now. The inference that it was intended that the grandchildren should take *per stirpes*, that is, as a class, and not separately, was derived from the fact that they were referred to in the will as representatives, and were expressly called heirs of their father. There was certainly more than a faint glimpse in the context of a construction different from the usual one, and this may be affirmed of all the cases where the *per stirpes* construction has been adopted.

So far from this will affording us any glimpse of an intention to depart from the settled construction of similar words, all its provisions strongly indicate a strict adherence to it. There is no reference to any persons who are to take in a representative capacity, except as to the children of the testator's deceased sister Sarah, who are expressly directed to take what their mother would

have had if she had been living. The brothers and sisters of the wife without the will would have taken nothing; they represent no one, unless it be the wife, and as her representative, they would take equally.

All the circumstances of this case tend to show that the testator meant what his words import, that is to say, that the brothers and sisters of his wife should each have the same share of his real estate as his own brothers and sisters. He first gives it to her during her life, with full power to sell it for the payment of his debts or for her support. In disposing of it after her death, if it should remain unsold, it was quite natural, as they had no children, that he should direct it to be divided equally between his own brothers and sisters and those of his wife. The former were few in number, well known to him, and easily named, while the others were numerous, and perhaps their names not very familiar to him. The express direction in regard to his sister Sarah's children, although awkwardly expressed, plainly provides that they are to take as a class. It implies knowledge that, without some such direction, they would probably take each an equal share with the brother and sister; and no such directions being expressed in reference to the brothers and sisters of the wife, the inference is that he meant they should take each a share, and not a share as a class.

The testator's sister Hannah having died before him, I think her share must be held to have lapsed, to go now to the other devisees. By the common law, there was a distinction between a devise of real estate and a legacy of personal property; the latter, in case of the death of the legatee before the testator, going to the residuary legatee, while the former was held to be undevised property, and as such descending to the heir. This distinction was founded principally on the doctrine that a will could only pass real estate of which the testator was seized when the will was made, being regarded as a conveyance and as taking effect when made. The act of

1851, (*Nix. Dig.* 877,) which provides that real estate acquired by a testator after making his will shall pass by a general or special devise, unless a contrary intention shall appear, has done away with this distinction.   When the sister died, the share previously devised to her may be considered as reverting to the testator, and like any other newly acquired real estate, passed by the general words of the will. Since that act, a lapsed devise of real estate, like a lapsed legacy of personal property, must be held to pass to the residuary legatee, the reason being the same in both cases. 4 *Kent* 541, 543; 7 *Metc.* 146, *Prescott* v. *Prescott.*

I am therefore of opinion that it should be certified to the Circuit Court—first, that the will of Joseph Smith did not devise the undivided one-fourth part of the premises in dispute to the plaintiff; secondly, that upon the facts of the case, the plaintiff was not at the commencement of this suit entitled to the undivided one-third part of the premises, but that he was entitled to the undivided one-eleventh part thereof.

CITED *in Fisher* v. *Skillman's Ex.*, 3 *C. E. Gr.* 235.