Clark *v.* Lynch.

——————— • • • ———————

ELIZUR CLARK and THOMAS J. LEACH, executors, &c. of PATRICK D. LYNCH, deceased, *vs.* ANDREW J. LYNCH, PATRICK LYNCH and others.

In construing wills, the courts take notice of the natural relations in which the testator stands to the objects of his bounty, and of the mode in which the law would dispose of the estate in case he had died without indicating his purposes; and thus they will interpret the will by these considerations and legal dispositions, unless such interpretation should be overcome by extrinsic facts clearly existing and obvious to the mind of the testator, or by the explicit and unmistakable terms of the will.

When the word "heirs" is used in a will, and there are no other words to control the presumption, the legal inference is that it is "*nomen collectivum;*" that it designates the persons whom the law appoints to succeed to the inheritance in cases of intestacy; and that legatees thus designated take by representation, and not in their own right.

Although a different intention may be inferred, and a different rule of distribution may be applied, when the word "children" is used, instead of heirs, and in the absence of any thing to control the division, it may in such cases be *per capita,* yet even then if the intention can be collected from the will that the children of a deceased party are to take as a class, they will be adjudged to take *per stirpes.*

Clark *v.* Lynch.

In all the cases in which it is held that where a gift is made to one person standing in a certain relation to the testator, and to the children or heirs of another person standing in the same relation to him, the beneficiaries take *per capita*, it will be found that the words "to be equally divided," or "in equal shares," or words of similar import, have also been employed in the will, and have been deemed by the courts of controlling significance in ascertaining and determining the intent of the testator. *Per* BACON, P. J.

So far is it from being the established rule that where a residuary bequest is made to A. and the heirs of B. without further description, limitation or direction, the legatees all take *per capita*, it may be affirmed that even in the case where the words "equally to be divided" are used, the courts will avail themselves of any other language in a will which may indicate a different intention on the part of the testator, and one more consonant with natural impulses, to abandon the rule of distribution *per capita;* or, as the books express it, upon "a faint glimpse of a contrary intent." *Per* BACON, P. J.

A testator, by the seventh clause of his will, devised as follows: "I give, devise and bequeath the balance of my property, real and personal, to my brother James Lynch, and to the male heirs of my brother John Lynch, deceased, except that Dennis Lynch, one of said heirs, is to receive no part whatever, but the same is to be divided among the other male heirs of said John Lynch, deceased." *Held* that, by the true construction of this clause, James Lynch was entitled to one half of the residuary bequest, and the male heirs of John Lynch, excluding Dennis, were entitled to the other half; and that the distribution was to be made *per stirpes,* and not *per capita.*

THE executors of Patrick D. Lynch, deceased, brought this suit to obtain an adjudication of several questions arising under the will of the deceased. The testator died on the 19th of February, 1864, possessed of a large estate, leaving a will dated the 3d of that month, and two codicils thereto, one dated the 6th and the other the 15th of the same month, all of which were duly admitted to probate. After making sundry dispositions of parts of his estate, the testator disposed of the residuum, by the seventh clause, as follows:

"Seventh. I give, bequeath and devise the balance of all my property, real and personal, to my brother James Lynch, and to the male heirs of my brother John Lynch, deceased, except that Dennis Lynch, one of said heirs, is to receive no part whatever, but the same is to be divided among the other male heirs of said John Lynch, deceased."

The construction of this clause is the only matter in respect to which there was a contest at the trial, and the question was, whether James Lynch, the brother of the deceased, took one half of the whole residuum, or whether he shares *per capita* with the children of John Lynch, deceased, except Dennis. Other questions were involved, but they were not contested, and are not now material. It appeared at the trial that, at the date of the will and at the death of the testator, there were living seven male children of the said John Lynch, deceased, to wit: Andrew J. Michael, Daniel, James, Patrick, Edward and Dennis, one of whom, Edward, died pending this suit, and his executors were substituted in his place as parties. It also appeared that before the testator made his will two sons of his said brother, John Lynch, had died without issue, so that in all John Lynch had had nine sons of whom the seven above named were living when the testator made his will and when he died ; also that said John Lynch had a daughter, who is still living. It also appeared that said James Lynch, named in said residuary clause of the will, was the only surviving brother of the testator when the will was made ; that he had a family of four sons and two daughters, and that two other daughters of said James Lynch had died, leaving children. It also appeared that John O. S. Lynch is a son of said James Lynch, the testator's brother, and is the husband of Nellie B. Lynch, and that Mary J. Murray is a daughter of said James Lynch ; that Andrew J. Lynch, mentioned in the fourth clause of the will, and Patrick Lynch, mentioned in the second codicil, are sons of said John Lynch, the deceased brother of the testator. It appears by the will that the testator gave $2000 in stocks to the said Mary J. Murray, daughter as aforesaid of James Lynch, and that he also, in the sixth clause, provided very liberally for the said Nellie B. wife of one of the sons of said James Lynch ; also that he gave $1000 of stock to the said Andrew J. Lynch, one of the sons of the deceased brother John, as aforesaid ; and

by the second codicil he also made a like bequest to Patrick above mentioned, another of the sons of John.

. Mr. Justice MORGAN, who tried the case, decided that James Lynch, the brother of the testator, took one half of the residuary estate, and that the sons of the deceased brother John (except Dennis) took the other half. He also decided the other questions in the case, and judgment was entered on his decision. Andrew J. Lynch and others, the sons of said John Lynch, appealed to the general term.

*G. F. Comstock,* for the appellants. I. The residuary, devise and bequest were to James Lynch and the seven sons of John Lynch, except Dennis. That is, to James Lynch and the six other sons of John Lynch. Each of the devisees or legatees therefore take one seventh part.

*First.* The concluding words, "except Dennis Lynch, one of said heirs," &c. only mean to except him and to declare that the division or disposition of the estate shall be among the other six. They have no bearing on the construction of the previous words. It stands then as a devise to James and to the male heirs of John, except Dennis.

*Second.* John Lynch having died before the will was made, his male heirs were certain determinate, and ascertained persons. Those persons as individuals were, therefore, the devisees, and the clause is to have the same construction as though it read to James Lynch and to Andrew J. Lynch, &c. by name, sons of John Lynch, deceased. The word heirs is not used as a collective noun but as a description which merely pointed out the individuals who were to take.

*Third.* And in cases of this nature the rule is that all the devisees or legatees take in equal parts *per capita,* and do not take *per stirpes.* And that conclusion in this case is strengthened by the circumstance that throughout the will, the testator has paid no attention to the rules of descent and distribution; two of the children of James are specially provided for, and so are two of the sons of John. There is

nothing to repel, but every thing to confirm the legal conclusion that the testator intended equality in the shares of all the devisees. There are no words or circumstances indicating a divison of the estate into two equal parts. (2 *Powell on Devises,* 22 *Law Lib.* 177, 331. 2 *Jarman on Wills,* 81. *Myres* v. *Myres,* 23 *How. Pr. R.* 410. *Collins* v. *Hoxie,* 9 *Paige,* 81. *Bunner* v. *Storm,* 1 *Sand. Ch.* 357. *Blacklee* v. *Webb,* 2 *P. Wms.* 383. *Lincoln* v. *Pelham,* 10 *Vesey,* 166. *Lenden* v. *Blackmore,* 10 *Simons,* 626. *Murphy* v. *Harvey,* 4 *Ed. Ch. R.* 131. *Lord* v. *Moore,* 20 *Conn. R.* 122. *Moore* v. *Henderson,* 4 *Desaus.* 459. *Dowling* v. *Smith,* 3 *Beav.* 541. *Warrington* v. *Warrington,* 2 *Hare,* 54. *Tomlin* v. *Hatfield,* 12 *Simons,* 167. 17 *English Law and Eq.* 129, 125. 2 *Jones, N. C. Eq. R.* 202, 215. 8 *id.* 100, 108. 9 *Rich. S. C. R.* 459. 10 *id.* 1. 7 *id.* 125. 30 *Alabama R.* 391. 8 *Sand. S. C. R.* 555. 1 *Roper on Legacies,* 87. 3 *Brown C. C.* 367. 1 *Call.* 184. 8 *Beav.* 579.)

II. The fourth clause of the judgment appealed from, which disposes of this question is therefore erroneous and should be reversed and modified so as to declare that James Lynch and the six sons of John Lynch each take one seventh part of the residuary estate.

*C. Andrews,* for the plaintiffs. I. The cardinal inquiry in the construction of wills, is to ascertain the *intention* of the testator. The technical rules of construction, applied to the construction of deeds, *inter vivos,* yield when applied to the construciion of wills, if on the consideration of the whole will, it appears that by their application the intention of the testator would be defeated. Precedents are not allowed to have an arbitrary and unbending control, in any case not precisely analogous, and not strictly identical. (4 *Kent's Com.* 533. *Redfield on Wills,* 422–424.) The court, in construing a will, regard the circumstances under which it was made — the state of the testator's property, and of his family,

and other similar circumstances.   (*Jarman on Wills, vol.* 2, *p.* 525, *rule* 10.)

II.  By the true construction of the will in question, *James Lynch,* the brother of the testator, is entitled to one half of the residue of the property devised and bequeathed by the *seventh* clause of the will, and the *male heirs* of John Lynch, a deceased brother of the testator, excluding Dennis Lynch, one of said male heirs, are entitled to the other half. The distribution.to the residuary legatees is to be made *per stirpes,* and not *per capita.*   The male heirs of John Lynch, (excepting Dennis Lynch,) as a *class,* take one share of the residue, and the defendant, James. Lynch, the other.  (1.) This construction is the natural one in view of the relation in which the testator stood to the legatees.   Distribution *per stirpes,* is in harmony with the dictates of natural feeling. (2.) *Statutes of distribution* in cases of intestacy proceed upon this rule, and distribute the property of intestates *per stirpes,* and not *per capita,* as between persons standing in different degrees of consanguinity to the intestate.   A testator is supposed in making his will, to act with reference to this customary and usual rule of distribution, unless the inference is repelled by the explicit terms of the will, or by extrinsic circumstances.   In *Fessel's Appeal,* (3 *Casey,* 55,) the court say: "In construing such devises, we can not reject the legal and customary principles governing the descent of estates, and according to them, distribution goes by *classes,* and this must be presumed to be the intention of the testator, generally, unless the contrary appears, for all are supposed to assent to the general justice of the law on this subject."   In *Mentor's Appeal,* (4 *Wright, Pa. Rep.* 111,) the court say: "When we find a man distributing his estate, in whole or in part, among his next of kin, and he leaves the proportions in which they are to take in doubt, it is quite natural for us to suppose that he had that *statutory or customary form. of distribution in his mind, and to interpret his will accordingly.*"   (3.) The terms of the bequest to

the *heirs* of John Lynch, deceased, imply that the legatees therein designated are to take by *representation*, and not in their own right. The term *heirs*, in its legal interpretation, designates the persons whom the law appoints to succeed to the property in case of intestacy. (*Jarman on Wills*, *vol.* 2, *p.* 2.) In *Daggett* v. *Slack*, (8 *Metc.* 454,) Chief Justice Shaw says : "According to the established rules of law, a devise to *heirs*, whether it be to one's own heirs, or to the heirs of a third person, designates not only the persons who are to take, but the manner and proportion in which they are to take. ⁕ ⁕ When there are no words to control the presumption of the will of the testator, the law presumes his intention to be that they should take as heirs would take by the rules of descent." In *Rouse* v. *Counter*, (1 *Halst. R.* 111,) the court say : "The word *heirs* always carries with it the idea of *representation*, which the word *children* does not." (4.) When by the terms of description in a devise, resort must be had to the statute of distribution to ascertain the *objects* of the gift, the *proportions* in which they are to take are to be determined in the same way. (*Templeton* v. *Walker*, 3 *Rich. Eq.* 542. *Jarman on Wills, vol.* 2. *p.* 34.) (5.) By the necessary construction of the clause in question, the testator *could not* have intended that the legatees therein designated should take *per capita*. Equality of distribution between the several legatees, which is implied in a distribution *per capita*, is under this will plainly impossible. *Burrill's Law Dic.* (*title* "*per capita*." 2 *Kent's Com.* 425.) James Lynch is not to share in the part of the estate, which, *except for his exclusion*, would have gone to Dennis Lynch, one of the sons of John Lynch, but *this part* the will declares shall be devided among the "*other male heirs of John Lynch, deceased*." If the construction of the appellants is to prevail, then not only is there no distribution *per capita*, but *each* of the heirs of John Lynch entitled to take under the will, would take a greater portion of the estate than the brother of the testator, by so much as each

share would be increased by the division of the part of Dennis Lynch. This consideration seems to establish conclusively that the persons designated as the *male heirs* of John Lynch take under the will as a *class*, and not per capita. The testator makes them a *class* by the very terms by which he has appointed the distribution.

III. The authorities relied upon by the appellants are not opposed to, but sustain the construction of this will, claimed on the part of the respondents. (1.) It has been held that when a bequest is made to a person standing in a certain relation to the testator, and to the *children* of another person standing in the same relation, with a direction that the property shall be *equally divided* between them, the legatees take *per capita*, and not *per stirpes.* And this upon the ground that the word *children* is not a word of representation, and that the direction that the property shall be *equally divided* between the legatees, implies a division *per capita.* The rule is stated in general terms by Jarman in his work on wills, (*vol.* 1, *p.* 81,) without reference to the particular grounds upon which it is based, but the cases referred to by him in support of the rule, establish it as above stated. The rule is more accurately stated by Roper, (*Roper on Legacies, p.* 159,) as follows: "Although the general rule is settled as above stated, that when a fund is given to persons in existence, and the *children* of others who are dead, *equally* as tenants in common, the legatees take per capita, yet that rule is not inflexible, but must yield to one of more controlling importance, that the intention to be collected from the whole will must be the principle of interpretation. When, therefore, the intention can be collected that the children of the deceased are to take as a *class*, that construction must prevail, and they will accordingly take *per stirpes*." *Blakeley* v. *Webb*, (2 P. Wms. 383,) is the earliest case upon this subject. The testator in that case bequeathed the surplus of his personal estate "*equally* to his son James, and to his son Peter's children; to his daughter Traverse, and his

daughter Webb's children." His daughter, Webb, was living when the will was made.

The lord chancellor (King) at first inclined to hold that the grandchildren took *per stirpes*, but said the grandchildren could not take according to the statute of distribution, or in allusion thereto, as the daughter Webb *was living*, and so the children *could not represent her*, and on this ground decided that the legatees took *per capita*. The court, in *Phillips* v. *Grath*, (3 *Bro. Ch.* 64,) refer to this fact, and to the direction that the property should be equally divided, as the grounds of the decision. In *Dowding* v. *Smith*, (3 *Beavan*, 541,) the testator made a bequest to "A. and the *children* of B. to be *equally divided.*" The court upon the force of the words "equally to be divided" held that each of the legatees took per capita." In *Lenden* v. *Blackmore*, (10 *Simons*, 626,) same ruling as to a bequeath "to be *equally divided* between S. L. and M. S., the daughters of the testator's sister E. S. and E. B., the daughter of her sister S. M., and her *children*. In *Warrington* v. *Warrington*, (2 *Hare*, 54,) the testator directed that the bequest should be *equally divided* between the legatees (brothers, sisters and nephews,) naming them. The vice chancellor said: "The number of shares into which the residue is divided, must be determined by counting the legatees, among whom it is *equally given.*" Again he says: "Here was a gift in severalty to several persons." (*Butler* v. *Stratton*, 3 *Bro. Ch.* 367.) Legacy to A. and B. and the children of C. *equally*. Lord Thurlow doubted, but following the earlier decisions, held that the legatees took *per capita*. (*Abbey* v. *Newman*, 17 *Eng. L. and E.* 125.) Gift of personalty to be *equally divided* between J. and A. for the period of their natural lives—after which, to be *equally divided* between their children; *Held*, that on the death of A., J. was entitled to a life interest in one moiety, the remainder to be divided between the children of A. and J. *per capita*. Several cases in New York have followed the

Clark *v.* Lynch.

English cases in the construction that the words "equally to be divided" in a devise, imply equality of distribution *per capita.* (*Collins* v. *Hoxie*, 9 *Paige*, 81.) In this case the testator directed that the residue of his property "should be *equally divided* among the children of my sister Mary, my brother Solomon, and my brother John." The parents of the children were living when the will was made. The chancellor, while expressing doubts as to the intention of the testator, held upon the strength of the English cases, that that the children took *per capita*, especially as the parents of some of the grandchildren were living. (*Bunner* v. *Storm*, 1 *Sand. Ch.* 358.) The testator directed that one seventh of his estate should be *equally divided* among his daughters, Elizabeth, Mary and Catharine, and the heirs of his deceased daughter, Hester. The vice chancellor held that each legatee took *per capita*, upon the force of the words, *equally divided*, in the will. (*Murphy* v. *Harvey*, 4 *Ed. Ch.* 131.) The testator devised to J. and M., brothers of the testator, and his sister M., and their children, and in case of the death of either of them, to their heirs, to be *equally divided* among them who survive, and the children and heirs of the deceased. Both sister and brothers died before the testator, and one of the sons of the sister died also, leaving children. It was held that each of the children of the deceased son took *per capita.* The vice chancellor, (McCoun,) said : "The controlling words are, 'to be equally divided.' These words, when applied to a gift to several persons of different degrees of consanguinity to the testator, supersede the manner of distribution, which the statute of distribution has prescribed." (*See also Myres* v. *Myres*, 23 *How.* 410.) The same construction of similar words, has been followed in other states upon the same reasoning. (*Freeman* v. *Knight*, 2 *Iredell's Eq.* 72.) The testator directed that the proceeds from the sale of certain negroes should be *equally divided* between his heirs. The court held that if the

bequest had been to his *heirs*, they would have taken in the proportion prescribed by the statute of distribution; but as the will directed the profits to be *equally divided*, the division must be *per capita*. That the words, *equally to be divided*, are the controlling words in such cases, is laid down by Shaw J. in 8 *Metc.* 454, who after holding that in a devise to *heirs* the statute of distributions determined the object and proportions of the gift, says: "Such construction will be controlled by any words in the will indicating a different intention, as if after a devise to heirs, it be added, in "equal shares," or "equally to be divided." (2.) The courts abandon the construction that legatees take *per capita*, under a bequest of property to be *equally divided*, upon a "faint glimpse" of a contrary intention. (*Jarman on Wills, p.* 81. *Brett.* v. *Horton,* 5 *Jur.* 696.) It is evident that courts regard the construction established in *Blakeley* v. *Webb* as in most cases contravening the intention of the testator, and they have no inclination to extend it to cases not precisely within the adjudged cases. (*Lady Lincoln* v. *Pelham,* 10 *Ves.* 174. 1 *Sand. Ch.* 358. 9 *Paige,* 81. 5 *Dutcher,* 345.) In *Rouse* v. *Counter,* (1 *Halst.* 111,) the court, referring to *Blakeley* v. *Webb,* says: "To make the most of it, it can give the rule only in cases exactly like itself." (3.) The following cases sustain the construction claimed by the respondents: *Rouse* v. *Counter,* 1 *Halst.* 111; *Alden* v. *Beall,* 11 *Gill and J.* 123; *Fessel's Appeal,* 3 *Casey,* 55; *Groig's Appeal,* 7 *id.* 292; *Gillman* v. *Underwood,* 3 *Jones' Eq.* 100; *Mentor's Appeal,* 4 *Wright,* 111. (4.) In this case there is not only an absence of the words upon which a division *per capita* has been adjudged, but the intention of the testator, that the male heirs of John Lynch shall take as a *class*, and not *per capita*, is uncontrovertable. There can be no distribution of the property under the will consistent with its languaue, except it be a distribution *per stirpes*.

Clark *v.* Lynch.

*By the Court,* BACON, P. J.  There is but a solitary question presented for adjudication in this case, and that lies in a very narrow compass.  It arises upon the construction of the 7th clause of the will of Patrick Lynch.  That clause is as follows:  "I give, devise and bequeath the balance of my property, real and personal, to my brother, James Lynch, and to the male heirs of my brother, John Lynch, deceased, except that Dennis Lynch, one of said heirs, is to receive no part whatever, but the same is to be divided among the other male heirs of said John Lynch, deceased."

At the date of the will and the death of the testator, there were living seven sons of John Lynch, of whom Dennis, (who is by the will excluded from any share of the surplus,) was one.  It was substantially conceded by the counsel upon the argument that there is nothing in any other part of the will, or in the circumstances surrounding the testator, that will afford any essential or, indeed, appreciable aid in the construction of this clause, but that it stands substantially upon its own language, and the light which adjudicated cases throw upon it.  The construction which the counsel for the appellants, who are the heirs of John Lynch, place upon it, is that the residuary bequest is to James Lynch, and the seven sons of John Lynch, except Dennis, in equal portions, and that the rule of law is that all the devisees take *per capita* and not *per stirpes.*  On the other hand the executors of Patrick Lynch, who are the respondents in this suit, insist that by the true construction of this clause James Lynch is entitled to one half of the residuary bequest, and the male heirs of John Lynch, excluding Dennis, are entitled to the other half, and that the distribution is to be made *per stirpes* and not *per capita,* and this is the precise and only question here.

The counsel for the appellants cites a large number of cases, beginning with *Blacklee v. Webb,* (2 *P. Wms.* 383,) where it is claimed the rule for which he contends originated, to sustain the canon of interpretation upon which he insists, and the counsel for the respondents a number quite as large

to uphold the rule upon which he claims the distribution should be made. I do not think it would be profitable to go over the cases with a view either to their minute dissection, or in an exhaustive effort to discriminate or reconcile them. It may be conceded that they are not entirely in harmony, and yet on a survey of the whole ground covered by them, I think it may be fairly claimed, that several general propositions are established as the result of the cases, which, taken as a whole, determine that the learned judge before whom this case was tried gave the true interpretation to the clause of the will in question, and directed a distribution in accordance with the intention of the testator.

A single remark may be indulged in reference to the case of *Blacklee* v. *Webb*, where the rule contended for by the appellant's counsel had its birth, and by which we are exhorted to stand as conservators of the ancient landmarks too prone to be removed by daring innovations of our own day. It was a decision obviously made with considerable hesitation, and under a clear inclination the other way. A difficulty which existed in holding that the children took *per stirpes* was that the mother of the children of the testator's daughter Webb was living and thus they could not be said to represent her, and to determine that grandchildren could take by representation when their ancestor was yet in life, seemed, in the words of the Lord Chancellor, "to go too much out of the will and contrary to the words." The language of the bequest was also "equally" to the testator's, Mr. James', and "to his son Peter's children," and "his daughter Webb's children." These are words which have been since seized upon to uphold such a division as was decreed in that case; and in general it may be remarked that the case has been followed with hesitation and reluctance, and as has been said by a judge in a recent case in New Jersey, "can give the rule only in cases exactly like itself."

I now proceed to state several propositions which I think

Clark *v.* Lynch.

may be gathered from and held to be fairly established by adjudged cases.

I. In construing wills, the courts take notice of the natural relations in which the testator stands to the objects of his bounty, and of the mode in which the law would dispose of the estate in case he had died without indicating his purposes ; and thus they will interpret the will by these considerations and legal dispositions, unless such interpretation should be overcome by extrinsic facts clearly existing and obvious to the mind of the testator, or by the explicit and unmistakable terms of the will.

II. When the word "heirs" is used in a will, and there are no other words to control the presumption, the legal inference is, that it is "*nomen collectivum;*" that it designates the persons whom the law appoints to succeed to the inheritance in cases of intestacy, and that legatees thus designated take by representation and not in their own right. This rule is nowhere better or more clearly expressed than by Chief Justice Shaw in *Daggett* v. *Slack*, (8 *Metc.* 453,) where he says that "a devise to heirs, whether to one's own or the heirs of a third person, designates not only the persons who are to take, but the manner and proportion in which they are to take. When there are no words to control the presumption, the law presums the intention to be that they take, as heirs would take, by the rules of descent."

III. Although a different intention may be inferred, and a different rule of distribution may be applied where the word "children" is used instead of heirs, and in the absence of any thing to control the division, it may in such cases be *per capita;* yet even then if the intention can be collected from the will that the children of a deceased party are to take as a class, they will be adjudged to take *per stirpes.*

IV. In all the cases, it is believed, without exception, in which it is held that where a gift is made to one person standing in a certain relation to the testator, and to the children or heirs of another person standing in the same relation to

him, the beneficiaries take *per capita,* it will be found that the words, "to be equally divided," or "in equal shares," or words of similar import, have also been employed in the will and have been deemed by the courts of controlling significance in ascertaining and determining the intent of the testator.

V. So far is it from being the established rule, that where a residuary bequest is made to A. and the heirs of B. without further description, limitation or direction, the legatees all take *per capita,* it may be affirmed that even in the case where the words "equally to be divided" are used, the courts will avail themselves of any other language in a will which may indicate a different intention on the part of the testator, and one more consonant with natural impulses, to abandon the rules of distribution *per capita;* or as the books express it, upon "a faint glimpse of a contrary intent."

I have not deemed it needful to cite under each of the foregoing propositions the authorities by which they are severally supported, but some one or all of them will be found to be fully maintained by the following, among many other cases that might be vouched in their support: *Fessel's appeal,* 3 *Casey,* 55; *Daggett* v. *Flack,* 8 *Metc.* 464; *Rouse* v. *Counter,* 1 *Halst.* 111; *Lenden* v. *Blackmore,* 10 *Sim.* 626; *Collins* v. *Hoxie,* 9 *Paige,* 81; *Murphy* v. *Harvey,* 4 *Ed. Ch.* 131; *Myres* v. *Myres,* 33 *How. Pr. Rep.* 410; *Griny's appeal,* 7 *Casey,* 292; *Mentor's appeal,* 4 *Wright,* 111; *Alden* v. *Beall,* 11 *Gill. & John.* 123.

As the result of these principles and authorities, I think it may be safely affirmed that if the clause of the will we have been considering had simply been a bequest of the residue of the testator's property to his brother James, and to the male heirs of his deceased brother John, there being no other qualifying words, either of description or limitation, or indicating a mode of distribution, the construction should have been that the heirs of John took as a class and by representation, the one half of the residue, and James, the surviving brother, the other half. But there is another clause superadded,

which, in my judgment, determines the construction beyond controversy. It is the direction that Dennis, one of the son's of John, is to receive no part whatever, "but the same is to be divided among the other male heirs of said John Lynch, deceased," The counsel for the appellants rejects these words as insensible, and as having no bearing on the construction of the previous words, or as implying something which they clearly do not expreess, to wit; that the division was to be in seven equal parts, of which James Lynch took one and the six sons of John, excluding James, took the other six. So far from the words being unimportant, I think they are pregnant with meaning, and that they contain the key, which, if it were otherwise difficult of accomplishment, unlocks the will. In my view, they demonstrate that the testator had in his mind a division of the residue of his estate into two equal parts, of which James was to receive a moiety and the six male heirs of John the other. Upon the construction contended for by the appellants there can be no equal distribution *per capita*, because each of the heirs of John would take, beyond the share of James, just so much as their share would be increased by the portion from which Dennis was excluded; for his share is to be apportioned not among all the devisees, but exclusively among the other male heirs of the deceased brother. This is the plain language of the clause; it is of no doubtful interpretation, and it seems to me to establish beyond a question that the persons designated as the male heirs of John Lynch take under the residuary clause as a class, and not *per capita*. It is not merely a "faint glimpse," but a manifest and "plain ostent" of a purpose to make the division among the heirs of John Lynch *per stirpes*.

My opinion is that the judgment rendered at the special term was right, and should be in all things affirmed, with costs.

Judgment affirmed.

[ONONDAGA GENERAL TERM, June 26, 1866. *Bacon, Foster* and *Mullin,* Justices.]