1. WILL—CONSTRUCTION—BENEFICIARIES.
    Testator devised his residuary estate to his wife for life; thereafter, to his brother and sister, "who shall * * * be living, jointly"; and after their death to the children of such brother and sister. The brother and sister died; the wife, who was his executrix, still living. *Held*, that they took no interest in the estate.

2. SAME.
    Where testator devised his residuary estate to his wife for life, thereafter to his sister and brother, and after their death to the children of said brother and sister, the children of the sister took one half of the estate, as representatives of their mother, and the children of the brother took the other half.

In the matter of the estate of John Walker, deceased. Proceedings for the settlement of the account of Fanny A. Bullock, surviving executrix. Decree rendered.

Oscar F. Lane, for executrix.
Lewis, Watkins & Titus, for Archibald Stewart.
Theodore Avery, for special and general guardian.
M. E. Baldwin, for Robert Walker, Isabella Kilpatrick, Christina Walker, Mary Walker, David Walker, and Frances Contrell.

WILLIS, S. John Walker, a resident of the town of Maryland, Otsego county, N. Y., died in said town on the 16th day of November, 1870. At the time of his death he left a widow, Fanny Walker, a brother, David Walker, and a sister, Mary Stewart. He also left nine nephews and nieces named in the will, to wit, Chestine (so called) Stewart, Archibald Stewart, and Mary Stewart, Jr., the children of Mary Stewart, Sr., and also Robert Walker, Isabella B. Kilpatrick, Christina Walker, Mary Walker, David Walker, and Frances Contrell; the last-named six persons being the children of said David

Walker. All of these last-named nine persons were and are in equal degree of relationship to John Walker, deceased. Chestine Stewart died without issue about the year 1891. Mary Stewart, the sister of the deceased, died about the year 1899. Her daughter Mary Stewart, named in the will, survived the testator, John Walker, but died before her mother, Mary Stewart, Sr., leaving certain minor children, for whom a special guardian has been appointed on the accounting. These children are William D. Raymond, Mary Elsie Raymond, and Charlotte Blecken. David Walker, the brother, died about the year 1892. Fanny Walker (now Fanny Bullock), the widow, is still living, but all the parties interested in said estate under said will have consented that the funds now in the hands of the said Fanny Bullock be distributed; she taking a gross sum for the value of her life interest therein, according to the Northampton tables. The will of said John Walker was duly admitted to probate in the surrogate's court of the county of Otsego on the 9th day of January, 1871, and on that day letters testamentary were granted to Fanny A. Walker and David Walker. David Walker has since died. Fanny A. Walker (now Fanny A. Bullock) is the sole surviving executrix of said estate. She has filed in this court her accounts as such executrix for final judicial settlement.

The following is a copy of the will of the said John Walker:

"Will. I John Walker of Maryland, Otsego County, N. Y. do make, declare and publish this my last will and testament as follows:

"First. I give as a legacy to Fanny Palmer, daughter of the late Lewis R. Palmer, deceased, a bond of the Camden and Amboy Rail Road Company, a corporation of the State of New Jersey, of the denomination of one thousand dollars, forever and I hereby authorize my executors hereinafter named, after my decease to deliver to her the same.

"Second. I give and bequeath as a legacy to Jerry Davis, who has faithfully attended me during my sickness, a mortgage given by David Johnson, and bond accompanying the same, conditioned for the payment of the sum of three hundred dollars and interest, forever.

"Third. I give and bequeath to my sister Mary Stewart, of Clinton, Oneida County, New York, the use and occupation and the rents, issues and profits of my brick house and lot upon which it stands located in the city of Hoboken, New Jersey, being Number 221 Bloomfield Street during the term of her natural life, and after her decease, I will, bequeath and beheth the same to her heirs who shall then be living, and to the heirs of my brother David, who shall then be living, jointly forever.

"Fourth. The remainder and residue of my estate, both personal and real I give and bequeath to my wife Fanny Walker, during the term of her natural life, and after her decease, I give and bequeath the same to my said sister Mary Stewart and David Walker, who shall then be living, jointly, share and share alike forever.

"It is my intention to leave my said property, except the two first legacies as above, after the decease of my said sister Mary and my wife Fanny, to Chestine Stewart, Archibald Stewart and Mary Stewart, or the survivors of them, children of my said sister and to Robert Walker, David Walker, sons of my brother David Walker and Isabella and Christina and two other daughters of my said brother, whose name I cannot now recollect, jointly, share and share alike, or to the survivors of them.

"Lastly I hereby appoint and constitute my brother David Walker and my wife Fanny Walker executors of this my last will and testament.

"In Witness Whereof I have hereunto subscribed my name this 16th day of November 1870.                          John Walker."

The legacies provided for by the first and second subdivisions of the will have been paid. Mary Stewart, mentioned in the third subdivision of the will, has died since the death of the testator, and the property mentioned in the said third subdivision has been disposed of by the courts of New Jersey, in which state the said property is located.

The only controversy in this proceeding is in regard to what persons, by the provisions of the fourth subdivision of the will, are entitled to receive the personal property now in the hands of the said executrix, the said Fanny Walker (now Fanny Bullock), having filed her consent to accept at this time a gross sum for the value of her life interest in said personal property, and all the interested parties having consented that the said personal property now in the hands of said executrix be now distributed. Under such conditions, it is therefore proper and necessary, for the purpose of determining this question, to consider the said question as though the said Fanny Walker was dead.

I think it is a fair construction of the language employed in the will that the testator intended to give the remainder to his sister, Mary Stewart, and his brother, David Walker, only in the event that they survived the widow, who was the life tenant. By the fourth subdivision of the will, the residue of the testator's estate, both personal and real, is bequeathed to his wife, Fanny Walker, during the term of her natural life; and "after her decease" the remainder is bequeathed to his sister, Mary Stewart, and his brother, David Walker, "who shall then be living, jointly, share and share alike, forever." The words "who shall then be living" would seem to have no meaning unless they referred to the decease of the life tenant. The provisions of the will above referred to, unless given such a construction, would be entirely inconsistent with the declared intention of the testator, as expressed in the remainder of the fourth subdivision of the will, for the testator declares his intention to be that after the decease of his sister, Mary Stewart, and his wife, Fanny Walker, the estate shall go to certain nephews and nieces named in said fourth subdivision of the will—a provision wholly inconsistent with the theory that Mary Stewart and David Walker jointly took vested remainders upon the death of the testator. I think the testator intended the bequest to his sister, Mary Stewart, and his brother, David Walker, to be contingent upon the event that they should be living at the time of the death of the life tenant. They having both died before the life tenant, I am of the opinion that they took no interest or estate, under the provisions of said fourth subdivision of the will, in any property, but that the said estate in the hands of the life tenant was therefore disposed of by the remaining provisions of said fourth subdivision. Carmichael v. Carmichael, *43 N. Y. 346; Patchen v. Patchen, 121 N. Y. 432, 24 N. E. 695; McGillis v. McGillis, 154 N. Y. 532, 49 N. E. 145.

This brings us to the question as to whether the testator intended to separate his nephew and nieces into two classes, by designating the children of his sister, Mary Stewart, as one class, and the children

of his brother, David Walker, as another class, and dividing such remainder equally between the two classes, or whether the testator intended that all the nephews and nieces, or the survivors of those named in the will, should share equally in such remainder. In the determination of this question, reference should be had to the whole will, to aid in ascertaining the intention of the testator. It would seem clear from the first paragraph of the fourth subdivision of the will that the testator intended to divide his property equally between his brother and sister, if they were living at the time of the death of the life tenant. There is nothing in the second paragraph of said, fourth subdivision, as I view it, that expressly or by necessary implication changes the testator's purpose of dividing his property into two equal parts. He names the three children of his sister, Mary Stewart, or the survivors of them, and the children of his brother, David Walker, or the survivors of them, as the persons entitled to the property in case the bequests in the first paragraph of the fourth subdivision of the will fail by reason of the death of his sister and brother before the death of the life tenant. Why use the words "or the survivors of them," after the names of the three children of Mary Stewart, unless it was for the purpose of designating those three legatees, or the survivors of them, as one class, taking the share he had intended for their mother, under the first paragraph of the said fourth subdivision, in case she had survived the life tenant? The very same words of survivorship are used after the names of David's children, and, if the children of the brother and sister were intended to take the estate per capita, the words of survivorship following the names of Mary's three children were wholly unnecessary, and would have no meaning. Assuming, however, the intention of the testator to have been to give to the children of his sister, Mary, the share he had intended for their mother, then the words "or the survivors of them" would be very appropriate to express his intention to give Mary's three children, or the survivors of them, as the representatives of their mother, the share she would have taken had she survived the life tenant, and would be in harmony with the intention of the testator, as previously clearly expressed in subdivision 3 and in the first paragraph of subdivision 4 of the will. I think that Archibald Stewart, as the sole survivor of the three children of Mary Stewart, is entitled to one-half of the personal property bequeathed by subdivision 4 of the will, after deducting therefrom the value of the interest of the life tenant. Clark v. Lynch, 46 Barb. 68; Ferrer v. Pyne, 81 N. Y. 281; Vincent v. Newhouse, 83 N. Y. 505.

While it may be regarded as the general rule that, when the subject of the testamentary gift is to be "equally divided," the persons among whom the division is to be made would take per capita, yet it is equally well settled that this rule does not apply where a contrary intention is discoverable in the will. Bisson v. West Shore R. R. Co., 143 N. Y. 125, 38 N. E. 104. It is also a general rule that where a gift is made to a person described as standing in a certain relation to the testator, and to the children of another person standing in the same relation, as to "my brother A. and to the children of my

brother B.," A. only takes a share equal to one of the children of B., yet this rule is subject to many exceptions, and is never enforced where a contrary intention can be gathered from the language of the will. The rule is said to yield "to a very faint glimpse of a different intention." Ferrer v. Pyne, and other cases cited above. I think it is sufficiently plain in the case at bar that the testator had a contrary intention, and that he did not intend that the children of David should take more than the share that the testator had intended to give their father in case he had survived the life tenant.

The property to be distributed in this proceeding being personal property, the words of survivorship would seem to refer to the period fixed for the division, viz., the death of the life tenant, and not to the time of the death of the testator. Teed v. Morton, 60 N. Y. 502. Chestine Stewart and Mary Stewart, Jr., having died after the testator and before the life tenant, it would follow, therefore, that, after the deduction of the interest of the life tenant in the personal property to be distributed in this proceeding, Archibald Stewart, as the sole survivor of the three children of Mary Stewart, Sr., is entitled to one-half of the remainder of said personal property, and the six children of David Walker are entitled to the other one-half of the remainder of the said personal property, to be divided equally between them. Findings and conclusions may be prepared in accordance with the above. The decree may be entered accordingly.

Decreed accordingly.